IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:18-cv-383-FL

| | | |
|---|---|---|
| UBISOFT ENTERTAINMENT, S.A. and UBISOFT, INC., | ) ) ) | |
| Plaintiffs, | ) ) | **MEMORANDUM OF LAW IN** |
| v. | ) ) | **SUPPORT OF DEFENDANT'S** |
| YOUSICIAN OY, | ) ) | **MOTION TO DISMISS** |
| Defendant. | ) ) ) | |

Defendant Yousician OY ("Defendant" or "Yousician") respectfully moves to dismiss the

Complaint of Plaintiffs Ubisoft Entertainment, S.A. and Ubisoft, Inc. (collectively "Plaintiffs" or

"Ubisoft") pursuant to 35 U.S.C. § 101 and Federal Rule of Civil Procedure 12(b)(6) because the

claims of the asserted patent are directed to the abstract idea of teaching guitar by evaluating a

user's performance and generating appropriate exercises to improve that performance.  The

claims do not include any additional limitations to transform this unpatentable abstract idea into

a patent-eligible invention.

## I.  INTRODUCTION

The Supreme Court and U.S. Court of Appeals for the Federal Circuit have made clear

that abstract ideas are not patentable under 35 U.S.C. § 101.   In particular, methods that are

simply a digital variation of a well-established, real-world practice are unpatentable where, as

here, they lack the necessary connection to technological improvement that the patent laws seek

to encourage.

The claims of asserted U.S. Patent No. 9,839,852 (the "Asserted Patent" or the "'852

patent") are directed to a method of teaching guitar by evaluating a user's performance and

generating appropriate exercises to improve that performance.   This same method has been used

to teach guitar and other musical instruments throughout history, and the '852 patent claims nothing more than a computer program for performing this same traditional teaching method. Because they are directed to this well-established method and claim no technological improvement over the traditional real-world method, the Asserted Claims are invalid under 35 U.S.C. § 101, and Defendant respectfully requests that the Court dismiss Ubisoft's Complaint with prejudice.

## II. FACTUAL BACKGROUND

### A. The Parties

Defendant Yousician is a Finnish company founded in 2010 by Christoph Thür and Mikko Kaipainen, two friends who worked to develop a digital platform that helps teach people how to play guitar. The company's eponymous Yousician product is a digital music platform that millions of people around the world have used to develop their musical skills. Plaintiff Ubisoft is one of the largest video game companies in the world. Based in France, Ubisoft has more than two dozen offices and 13,000 employees worldwide, a market capitalization of over $8 billion, and global sales of more than €1.7 billion last year, mostly from immersive video game franchises such as Assassin's Creed and Ghost Recon.

### B. The Asserted Patent

Ubisoft acquired the application that issued as the '852 patent by assignment in connection with its acquisition of another game developer. Ubisoft accuses Yousician of infringing claims 1, 2, 3, 4, and 6 of the '852 Patent, which is entitled "Interactive Guitar Game." Complaint, ¶25. A copy of the Asserted Patent is attached to the Complaint as Exhibit A. [D.E. 1-1].[1]

---

[1] Citations to the Asserted Patent, [DE 1-1], are provided in column and line format "[_:_]."

The '852 patent does not disclose or claim a new type of machine, device, or other patentable invention. Rather, the '852 patent discloses and claims the abstract idea of performing a series of steps for teaching guitar. More specifically, the specification of the '852 patent discloses the use of a generic computer, a guitar or other musical instrument that can be played by the user and that has an input into the computer system, and software for performing the teaching process. As disclosed in the specification, using well-known technology, the computer can identify "which strings and frets are being played by the user and/or the velocity or timing with which the user plays certain notes or chords." [4:21-35]. This technology for processing the analog or digital input signal from the guitar is so well understood that the '852 patent simply refers to existing, known signal processing technology without any need for technical explanation.

The specification further discloses that a song may be selected by the user and the notes or chords to be played by the user may be displayed by the computer program on a display screen. The user can then play notes or chords on the guitar, and the computer program will process the analog or digital signal from the guitar and compare it against the selected song. Data regarding that comparison may be fed back into the computer program, and the computer program may provide the user with feedback regarding their performance such as a score or a "success" meter. [5:33-6:34].

The specification goes on to explain that:

If a user has trouble with a particular section of a song, the user (or the game engine) may switch to a carousel view and have the user repeat that section until the user improves. Thus, the game engine may assess the user's past performance and provide the user with exercises or games to target the areas that the user needs to work on in step 1303, and the game engine may then appropriately determine or form a section of mini-games to be played in step 1304. As the user selects the mini-game from the options provided by the game engine to play in step 1305 and plays the game in step 1306, the user is practicing various skills and songs or sections of songs and targeting certain weaknesses in order to improve overall performance.

3

[10:1-13].  This process is further described in the specification whereby the computer program can respond to the user's performance and "offer certain mini-games which cater to a user's particular weaknesses with regard to certain note or chord sequences, timing, etc." [14:3-11].  Examples of such "mini-games" described in the specification are simple practice exercises such as "Notes in a row" wherein the user "tries to play as many scrolling notes as they can until they make a mistake."  Other "mini-games" described in the specification are similarly common teaching exercises such as matching a particular tone, playing back what the user hears, playing note names shown to the user, speed trials playing certain note sequences as quickly as possible, etc.  [15:4-17:7].

This description of the invention from the '852 patent reflects nothing more than traditional guitar/instrument teaching methods wherein the teacher listens to the student's performance (processes the analog signal), compares that performance to the selected song, provides feedback to the user, and identifies exercises (mini-games) to improve the specific skills the teacher has identified as weak or lacking in order to improve the student's overall performance.

While a patent's specification discloses the subject of the invention broadly, it is "the claims of a patent [that] define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  Claim 1 of the '852 patent is the only independent claim asserted by Ubisoft in the Complaint.  Claim 1 is directed to a generic "computer storage device" – commonly referred to as computer "memory" – with a computer program stored on it that presents an "interactive game for playing a song on a guitar" by instructing a generic computer processor to perform five (5) steps.  The specific language of claim 1 is as follows:

1.  A non-transitory computer readable storage medium with a computer program stored thereon, wherein the computer program is operable to present an interactive game for

playing a song on a guitar, wherein the computer program instructs one or more processors to perform the steps of:

[a] presenting, on a display device, a plurality of fingering notations corresponding to the song to be played by a user;

[b] receiving, from a guitar input device, an analog or digital audio signal when the guitar is played by the user, wherein the received signal corresponds to the song played by the user;

[c] assessing a performance of the song as played by the user, based on the assessed performance, determining a portion of the performance that should be improved;

[d] based on the assessed performance and the determined portion of the performance that should be improved, selectively changing a difficulty level of at least a portion of the presented plurality of fingering notations corresponding to the song; and

[e] generating at least one mini-game different from the game for the song being played targeted to improving the user's skills associated with the performance of the determined portion.

[20:20-43].

Thus, the generic computer processor must perform the following steps at the instruction of the computer program:

(1) presenting fingering notations corresponding to a song;
(2) "listening" to the user's performance of the song;
(3) assessing the performance and determining a portion that should be improved;
(4) based on the assessment, selectively changing a portion of the fingering notations; and
(5) generating a "mini-game" to improve the user's skill for that portion.

This is the exact same process performed by humans teaching guitar. These steps have been performed this same way by human guitar teachers for as long as the guitar has existed, and these claims add no technological improvement to this longstanding teaching method.

Ubisoft has also asserted dependent claims 2, 3, 4, and 6. These dependent claims each add a minor limitation to claim 1, for example requiring that the changing in the difficulty level "is performed in real time during the playing of the song." The text of claims 2,3, 4, and 6 is as follows:

2. The computer readable storage medium of claim 1, wherein the selectively changing a difficulty level of at least a portion of the presented plurality of fingering notations includes changing a frequency or a speed of the presented plurality of fingering notations.

3. The computer readable storage medium of claim 1, wherein the selectively changing a difficulty level is performed in real time during the playing of the song.

4. The computer readable storage medium of claim 1, wherein the guitar is one of an acoustic guitar or an electric guitar.

6. The computer readable storage medium of claim 1, wherein the computer program instructs the processor to assess past performances of the user and recommend appropriate songs based on a skill level of the user as determined from the past performances.

[20:44-54; 20:63-68].  These additional limitations add no new technological innovation. Rather, like the limitations of independent claim 1, they simply reflect steps common to standard, human guitar lessons being performed instead by a generic computer processor.  None of these dependent claims contributes any patentable concept by their additions to claim 1.

### III.  LEGAL STANDARD

A. **Patent Eligibility Under 35 U.S.C. § 101 is Properly and Routinely Decided on the Pleadings**

"Whether a claim is drawn to patent-eligible subject matter under [35 U.S.C.] § 101 is a threshold inquiry," which presents a question of law for the court to decide. *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012), citing *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), aff'd sub nom. *Bilski v. Kappos*, 561 U.S. 593 (2010). "[P]atentability under section 101 is an issue of law that may be resolved on a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted). *Consumer 2.0, Inc. v. Tenant Turner, Inc.*, No. 2:18CV355, --- F.Supp.3d ----, at ----, 2018 WL 5668617, at *3 (E.D. Va. Nov. 1, 2018) (citation omitted) (dismissing the complaint for failure to state a claim for relief where the asserted claims were invalid because they were directed to an abstract idea and thus ineligible for patent protection under 35 U.S.C. § 101);

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring) ("Addressing 35 U.S.C. § 101 at the outset . . . conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation."); *Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014).

Evaluation of a patent claims' subject matter eligibility under § 101 does not require claim construction. *See Genetic Techs.*, 818 F.3d at 1373-4; *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347-48 (Fed. Cir. 2015); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012.   In determining eligibility, a court also need not address each claim if the court can identify a representative claim and the "claims are substantially similar and linked to the same abstract idea." *Consumer 2.0, Inc.*, -- F.Supp.3d ----, at ----, 2018 WL 5668617, at *3.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To meet this standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations

omitted). When ruling on a motion to dismiss, the court may consider the facts as alleged in the complaint, "documents attached to the complaint, . . .[and documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted). The '852 patent is attached to and referenced in the complaint, and the court may properly consider its contents in ruling on the instant motion. *Trimble*, 484 F.3d at 705.

**B.      Abstract Ideas Are Not Patentable Under 35 U.S.C. § 101**

The Supreme Court "ha[s] long held that [§ 101] contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (*quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts" involves two steps. *Alice*, 134 S. Ct. at 2355.

First, a court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, the court then considers the additional "elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (*quoting Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 132 S. Ct. 1289, 1297-98 (2012)). In this second step, the court must "search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (*quoting Mayo*, 132 S.Ct. at 1294) (bracketed text added by the Supreme Court in *Alice*).

# IV.  ARGUMENT

The claims of the '852 patent are a textbook example of ineligible subject matter under *Alice*, claiming nothing more than a known process for teaching guitar routinely performed by a human that is instead performed by a generic computer system.

**A.    The '852 Patent is Directed to the Abstract Idea of Teaching Guitar by Evaluating a Performance, Selectively Changing the Difficulty, and Generating Exercises to Improve the Performance**

The asserted claims of the '852 patent are directed to the traditional, well-known process for teaching guitar comprising the steps of:

(1) presenting fingering notations corresponding to a song;
(2) "listening" to the performance;
(3) assessing the performance and determining a portion that should be improved;
(4) based on the assessment, selectively changing a portion of the fingering notations; and
(5) generating a "mini-game" to improve the user's skill for that portion.

This is simply the abstract idea of teaching guitar – and more specifically, teaching guitar by assessing a performance, selectively changing difficulty, and generating practice exercises to improve the assessed skills.  To this, the claims add only the use of a general computer and associated generic software to perform this process.  Like other known processes found to be abstract, the asserted claims are drawn to an abstract idea that is simply implemented using a general purpose computer.  *See, e.g., Mankes v. Fandango, LLC*, 238  F.Supp.3d 751, 757 (E.D.N.C. 2017) (finding claims directed to "long prevalent" practice of "allocating, tracking, and controlling inventory" to be drawn to an abstract idea).

Rather than claiming to have invented new enabling technology for teaching guitar, the '852 patent simply claims a common, known method for teaching guitar being performed by software on a generic general-purpose computer.  This reflects the specification, which makes no claim to any new hardware or other technology, specifically referring only generically to a "computer or platform" that is "capable of loading music, such that it can be displayed on a

display screen in multiple ways, and allows the user to read the music and play along. [4:8-13]. Nor does the specification explain "how" the computer/platform is to perform the steps comprising the claimed method. Leaving the task of implementation to the public and claiming the "resulting systems," i.e., mere functionality, is the definition of an abstract idea. *See Apple*, 842 F.3d at 1241. As in *Apple*, the inventor of the Asserted Patents sought to patent a well-established practice previously done in person without claiming a particular technologically improved way of doing so.

Careful review confirms that none of the limitations of claim 1 provides any technological improvement or solution beyond restating the abstract idea of providing guitar lessons via a generic computer/platform. For example, the first limitation requires "presenting fingering notations corresponding to a song." The presentation of fingering notations such as the widely used "tablature format," which shows song notation with strings and frets, is an abstract concept fundamental to the "storehouse of knowledge" relating to teaching guitar that patents cannot claim. *Bilski*, 561 U.S. at 602.

The second limitation adds "listening" to the user's performance, a fundamental human action that is instead being performed by the generic computer under the instructions of software that is not described in anything other than purely functional terms. The third limitation similarly requires the abstract action of assessing the performance and determining a portion that should be improved. The only distinction over traditional human assessment is that this function is to be performed by the generic computer, again under the instructions of generic software. The final limitations of claim 1 require the processor - based on the assessment – to change a portion of the fingering notations and generate a "mini-game" to improve the user's skill for that portion. These are again basic, human, teaching functions performed by actual teachers every day in

10

virtually every school – the claims simply require the same abstract functions to be performed by a generic computer/platform.

Viewed together, these claim elements are directed to the abstract idea of teaching guitar by generic computer processor running generic computer software. This is not a patentable idea. It is simply the digitization of an already-established practice using generic, unimproved computer hardware and software. "[T]here is a critical difference," the Federal Circuit has stated, "between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general" – the former may be patentable, but the latter is not. *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

*Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1234-35, 1240-43 (Fed. Cir. 2016) is instructive. The patents in suit in *Apple* were directed to a system that aimed to computerize a well-established practice, specifically, "ordering prepared foods." *Id.* at 1235. The concept of ordering prepared foods had "historically been done verbally," and using the methods described in the patents could be accomplished via a wireless handheld device on the Internet. *Id.* Although the patent claims at issue included physical elements such as a "central processing unit," a "data storage device," and a "graphical user interface" with certain windows and formats, id. at 1234, the Federal Circuit held that they were directed to an abstract idea under step 1 of *Alice*, i.e., "taking orders from restaurant customers on a computer." *Id.* at 1241. These patents, which claimed the "resulting systems" of generating "menus with particular features" rather than claiming a particular way of programming or designing the software, were "directed to certain functionality," and therefore, directed to an abstract idea. *Id.*

*Apple* is consistent with the well-established proposition that claims focused on the use of "generic computer network technology" to perform "a well-established, realworld practice" are directed to ineligible subject matter. *Intellectual Ventures I LLC v. J. Crew Grp., Inc.,* No. 6:16-

cv-196, 2016 U.S. Dist. LEXIS 125587, at *11 (E.D. Tex. Aug. 24, 2016). See also, *Alice*, 134 S. Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."). This is because claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis," without some sort of identified and claimed technological improvement, "fall into a familiar class of claims 'directed to' a patent-ineligible concept." *Elec. Power Group, LLC*, 830 F.3d at 1353.

The underlying rationale behind the principle that abstract ideas are not patentable is the concern that patenting abstract ideas risks preempting broad technological areas. *Alice*, 134 S. Ct. at 2354. Abstract ideas, like laws of nature and natural phenomena, are "the basic tools of scientific and technological work." *Id.*

**B.     The Claim Elements of the Asserted Patents Do Not Transform the Abstract Idea Into a Patent-Eligible Invention**

Turning to the second step in this analysis, a claim directed to an abstract idea contains an inventive concept if it contains "an element or combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2354 (internal citations omitted). "[W]holly generic computer implementation is not generally the sort of 'additional featur[e]'" required to render a claim patent-eligible. *Alice*, 134 S. Ct. at 2358 (*quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289, 1297, 182 L. Ed. 2d 321 (2012)); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed Cir. 2014) ("That a computer receives and sends . . . information over a network— with no further specification— is not even arguably inventive.").

Here, the asserted claims do not contain "an element or combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2354 (internal citations omitted). Like the

12

claims in *Alice*, the claimed method simply implements the well-known process of teaching guitar using generic computer hardware and software. 134 S. Ct. at 2358-60; *Life Techs.*, 2016 Pat. App. LEXIS 7173, 2016 WL 5593329 (finding the concept of inventory management to be an abstract, "fundamental economic practice" under the Supreme Court's guidance in *Alice* and *Bilski*); *see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (finding claims directed to anonymous loan shopping to be patent-ineligible); *Intellectual Ventures I L.L.C. v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding limitations involving the use of the Internet and telephone networks insufficient to render method of tracking financial transactions patent-eligible); *OIP Techs., Inc., v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (finding claims directed to price-optimization using generic computer processes and hardware to be patent-ineligible).

The process claimed in the invention does not encompass *any* aspect of technological innovation. As the specification explains, "the processes presented herein are not inherently related to any particular computer, processing device, article or other apparatus." '852 patent at 2:22-24. The specification is similarly clear that "any references herein to specific file formats do not limit the scope of the invention, but merely provide examples of file formats that may be used in the implementation of particular embodiments of the invention, and various other file formats, protocols, etc. are contemplated herein." [4:15-20].

Rather, the "various components of the system" are simply "a computer or platform 100 which runs a game engine 120, a guitar or musical instrument 110 providing a guitar or musical instrument input 130, and 25 video and audio outputs 150." The guitar "may be any type of guitar (or other musical instrument), which the user can play, and may provide an input into the computer or platform 100, identifying which strings and frets are being played by the user or the velocity or timing with which the user plays certain notes or chords." [4:22-31].

Like the independent claims, the dependent claims do not add anything inventive. Claim 2 simply specifies that the change in difficulty must include changing the frequency or speed of the fingering notations, while claim 3 requires the difficulty to change in real-time as the song is played. These limitations require the processor to perform the exact same function as a human teacher, and add no new technological innovation. Claim 6 similarly requires the processor to perform the additional step of recommending an appropriate song to be played based on the student's past performance - another quintessential function of a human guitar teacher – without adding any sort of new technology.

Finally, dependent Claim 4 requires the guitar to be either an acoustic or electric guitar. This appears to "limit" the claim to all possible variations of guitar, and certainly does not add any technological innovation since both types of guitar are well-known and only generically claimed. There is simply no disclosure of or claim element in any of the Asserted Claims that is directed to technological innovation of any sort.

## V. CONCLUSION

The Asserted Claims are directed to an abstract idea and require no technological innovation – they simply claim the substitution of a generic computer running generic software for a human guitar teacher. For the foregoing reasons, taking all the allegations of the Complaint as true, this Court should dismiss Ubisoft's Complaint with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted this the 29th day of November, 2018.

/s/ Christopher M. Thomas
Christopher M. Thomas
N.C. Bar No. 31834
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
Phone: (919) 828-0564

PPAB 4579225v1

Fax:     (919) 834-4564
Email: christhomas@parkerpoe.com
*Local 83.1 Counsel for Defendant*

Jonathan Hangartner
X-PATENTS, APC
5670 La Jolla Boulevard
La Jolla, California 92037
Phone: (858) 454-4313
Email: jon@x-patents.com
(Special Appearance Forthcoming)

Amy Allen Hinson
S.C. Bar No. 73919
PARKER POE ADAMS & BERNSTEIN LLP
110 East Court Street, Suite 200
Greenville, SC  29601
Phone: (864) 577-6370
Fax: (864) 242-9888
Email: amyhinson@parkerpoe.com
(Special Appearance Forthcoming)

*Counsel for Defendant*

PPAB 4579225v1

## CERTIFICATE OF SERVICE

I certify that on this day the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will automatically send notice to all parties addressed as follows:

> Jennifer K. Van Zant
> Brooks Pierce McLendon Humphrey & Leonard, L.L.P.
> P.O. Box 26000 (Zip 27420)
> 230 North Elm Street, Suite 2000
> Greensboro, NC 27401
> Email: jvanzant@brookspierce.com

This the 29th day of November, 2018.

> /s/ Christopher M. Thomas
> Christopher M. Thomas
> N.C. Bar No. 31834
> PARKER POE ADAMS & BERNSTEIN LLP
> 301 Fayetteville Street, Suite 1400
> Raleigh, North Carolina  27601
> Phone: (919) 828-0564
> Fax:    (919) 834-4564
> Email: christhomas@parkerpoe.com
>
> *Local 83.1 Counsel for Defendant*

PPAB 4579225v1